# Patrick J. Carey, Receiver of Atlas Loan Co., v. William Rauguth et al.

1. PRESUMPTIONS—*In Favor of Sustaining Decrees.*—The Appellate Court will sustain a decree unless it is manifestly against the evidence, and especially so where the chancellor has heard all the witnesses whose testimony relates to the points in controversy.

2. SAME—*From the Possession of Trust Deeds.*—Possession of a trust deed at the office, by the vice-president of a loan company and trustee named in the trust deed executed to secure a loan from the company, is sufficient to satisfy the grantor in paying it and taking a release from such vice-president and trustee.

3. RECORD—*Right to Rely Upon.*—Where a trust deed to a loan com-pany is payable at any time, at the option of the maker, a purchaser of the premises without notice has a right to rely upon the record of a release made before the maturity of the trust deed and after the appoint-ment of a receiver for the company.

4. ABSTRACT OF RECORD—*Right to Rely Upon.*—A person having an abstract of a real estate title is not bound to go to the records where they are not different from the abstract.

**Foreclosure of a Trust Deed.**—Trial in the Superior Court of Cook County; the Hon. John Barton Payne, Judge presiding. Decree for defendants.; appeal by complainant. Heard in this court at the October term, 1898. Affirmed. Opinion filed May 8, 1899.

**Statement of the Case.**—Appellant filed his bill seeking the foreclosure of a trust deed to Henry Blettner, made by William Rauguth and wife on certain real estate in Chicago, to secure his bond of $10,000, dated March 9, 1894, conditioned for the payment of a loan of $5,000, to him made by the Atlas Loan Company, a building and loan association organized under the laws of Illinois, and also asking that a release of the trust deed made by Blettner be declared fraudulent and void, and that the same be canceled.

Among other parties defendant to the bill were the appellees, Elizabeth S. Liversidge and Amos Liversidge, her husband, and Mason Young and Ambrose S. Murray, Jr., trustees of Mary E. Lewis.

Elizabeth S. Liversidge claims to have purchased said real estate in good faith, paying the full value thereof on October 1, 1894, and without notice of the alleged fraudulent nature of said release, and relying upon the record thereof in the public records of Cook county.

Said Young and Murray claim to have loaned to said Rauguth $4,000, July 3, 1894, he making and delivering to them his note of that amount, and securing the same by a mortgage to them of said real estate; that they paid over the amount of said loan upon the faith that their said mortgage was the first and only lien on said real estate, and without any knowledge on their part that a receiver had then been appointed for said loan company, and in the full belief that the indebtedness mentioned in the bill had been fully paid and satisfied. Appellant was appointed receiver of the loan company April 18, 1894. A trial before the chancellor, the witnesses testifying in open court with the exception of Mason Young, whose deposition was read, resulted in a decree dismissing the bill for want of equity, from which this appeal is taken.

The trust deed sought to be foreclosed, as offered in evidence, had written across its face the words, " Paid April 10, 1894. Atlas Loan Company, by Peter Thiesges, Treas.," and the signatures thereto were canceled. The bond secured by the trust deed had the same indorsement across its face, and the signature thereto was canceled. As to when these indorsements were made, there is a conflict in the evidence. The indebtedness was not, however, paid as stated in the indorsements, and we think the preponderance of the evidence is that these indorsements were made prior to July 19, 1894. Appellant testified that after his appointment, the same or the day following, he went to the office of the loan company, where he met the secretary of the company, the said Rauguth, and the officers, and that Rauguth turned over to him, with other mortgages, this mortgage in question (meaning the trust deed), and the bond, and that he kept them in his possession from that time, except on the 18th day of July, 1894, when they were introduced in evidence before a master and left with him for a time thereafter, not definitely shown, and that Rauguth never got the papers from appellant. It also appears that appellant was appointed receiver at the instance of Rauguth, or an attorney, Martin, and that they were on friendly terms until after appellant heard that the release of the trust deed had been made; that Rauguth was secretary and assistant treasurer of the loan company, and did practically all its business, and that Peter Thiesges was only nominally treasurer. When appellees Young and Murray made the loan to Rauguth, their attorneys, Mason Brothers (who did all the business), as was their custom, first had Rauguth execute his note for $4,000 July 3, 1894, and also a mortgage or trust deed to Young and Murray, trustees, securing the same, which was recorded July 9, 1894. Thereafter an abstract of the property was made, showing the title, including this trust deed, which they examined. Two incumbrances on the property were shown by the abstract, one of them being the trust deed to Blettner. One of these incumbrances, a trust deed to

Wasmansdorff & Heinemann, was paid off by a check. of Mason Bros. to Rauguth, which was indorsed and delivered to Wasmansdorff & Heinemann, and their trust deed released.

Rauguth stated to Mason Bros.' representative, who attended to the business, that there was only $2,500 due on the trust deed to Blettner. A check of Mason Bros. for that amount was made to the order of Rauguth, and by him indorsed and delivered to Blettner, the vice-president of the loan company, at its office, on July 19, 1894, when, at the same time, Blettner delivered to the representative of Mason Bros. the trust deed now sought to be foreclosed, and the bond secured by it, and also a release of the trust deed, dated April 10, 1894. There is a conflict in the evidence as to whether the trust deed and bond thus delivered were the originals or copies thereof, substituted in place of the originals, and to deceive Mason Bros.' representative. We can not say that the evidence fails to show they were the originals. The release was recorded July 19, 1894, and a short time thereafter, at Rauguth's request, Mason Bros. gave the trust deed and bond handed to their representative by Blettner to Rauguth. The remainder of the $4,000, after deducting the expenses of the loan and paying taxes, was paid over to Rauguth. The check delivered to Blettner was introduced in evidence, and has the indorsement of Blettner. At the time of this transaction with Blettner neither Mason Bros. nor their representative, nor the appellees, Young nor Murray, had any actual notice that a receiver had been appointed for the loan company, nor had either of them any actual notice that there was any other amount due on this bond than the $2,500. The only one who professed to know anything of the amount due on this bond was Rauguth, and he testified that there was only $2,500 due when the release was delivered. At that time the president of the Atlas Loan Company was absent from the office of the company, and the by-laws of the company provided that, among other duties ·of the president, he should sign releases of mortgages and

perform other duties pertaining to the office, and that in the absence of the president, the vice-president should perform such duties. The by-laws also provided that the secretary should receive money paid to the company. Neither Mason Bros. nor their representative, who did this business, knew at that time that Rauguth was the secretary and assisting and acting treasurer of the company.

At the time of the hearing Rauguth had purchased and was the owner of ninety-five per cent of the stock of the company. On or about October 1, 1894, the evidence shows that the appellee, Elizabeth S. Liversidge, purchased and paid full value for said real estate, except $4,000, which she agreed to pay, and received a warranty deed of the same of that date from Rauguth and wife, subject to the mortgage to Young and Murray, which she assumed and agreed to pay. Before making the purchase she caused an abstract of title of the property to be examined by her attorney, which abstract showed the title in fee of the property to be in William Rauguth, subject only to the Young and Murray mortgage of $4,000. Neither she nor her attorney had any knowledge or notice whatever, at the time of said purchase, of any fraud or invalidity of said release of the Blettner trust deed, nor of any claim of lien thereunder by appellant.

CORNELIUS S. SEE and J. W. COCHRAN, attorneys for appellant.

The true view of this indebtedness is that the return of the money at any period, intermediate between the time of taking it and the time of the ultimate squaring of accounts upon the expiration of the society, or series, is not contemplated by the contract. That money is never, before that period, intended to be collected or repaid. Endlich on Building Associations, Sec. 129.

By his bond and mortgage he obligated himself to continue these payments until the end of the society's existence. Ibid, Sec. 447.

An agent intrusted with and in possession of a negoti-

able or other instrument, is deemed by the fact of such possession to be authorized to receive payment of the instrument in accordance with its terms, when and after it becomes due and not otherwise. Lawther et al. v. Thornton, 67 Ill. App. 214; citing Thompson v. Elliott, 73 Ill. 221, and other authorities.

The second mortgagee having notice that the prior mortgage had not matured was put upon inquiry. Keohane v. Smith, 97 Ill. 156.

Henry B. Mason, attorney for appellees Mason Young and Ambrose S. Murray, Jr., trustees, Mary E. Lewis and Hortense C. Nelson, contended that the Young loan is the first and only lien because the lenders exercised due care to pay off the Atlas loan. Ill. Rev. Stat., Cap. 32, Corporations, sub-title Loan Associations, Sec. 78; Thornton v. Lawther, 169 Ill. 228; Harris v. McIntyre, 118 Ill. 275.

They were entitled to rely and did rely upon the release of the Atlas loan. Bacon v. VanSchoonhoven, 87 N. Y. 446.

They had no actual knowledge of the receivership.

They had no constructive notice of the receivership. Miller v. Sherry, 2 Wall. 237; Low v. Pratt, 53 Ill. 438; Watson v. Gardner, 119 Ill. 312.

Warvelle & Clithero, attorneys for appellee Liversidge.

The rule is fundamental that one who purchases without notice of an equity is not affected by such equity; further, that a purchaser is not required to look for latent defects in the chain of conveyances when they purport to be made by the proper persons. Moore v. Hunter, 1 Gilm. 317; Spicer v. Robinson, 73 Ill. 519; Dickerson v. Evans, 84 Ill. 451.

It would be dangerous to purchase land if such was not the doctrine.

At the time of her purchase appellee Liversidge did all that a prudent person is required to do. She found appellant's trust deed upon the records; she also found a release of the same, regular in form and executed by the person

whom the law appoints to perform that act; she further found that the debt for which the trust deed was given was of indeterminate duration and might be discharged at any time. There was nothing to suggest fraud or irregularity, or to prompt further inquiry. She had a right to assume that the trust deed in question was properly released and no longer a lien. Bacon v. Van Schoonhoven, 87 N. Y. 446; Allen v. Woodruff, 96 Ill. 11; Warder v. Cornell, 105 Ill. 169; Grundies v. Reid, 107 Ill. 304.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

Appellant contends that the Blettner trust deed should have been declared a first lien, or that, second, he should be substituted to the Young and Murray mortgage to its full amount of $4,000, or, third, to the amount of $2,500.

It is not claimed that Mason Bros., or their representative, who did the business of making and closing the loan of $4,000 to Rauguth, were, by the public records, charged with constructive notice of the appointment of the receiver for the loan company, and the evidence is clear that they had no actual notice of the receivership.

The only question, then, so far as concerns the Young and Murray mortgage, is, had their agent, who closed the loan and paid the $2,500 to Blettner, knowledge of sufficient facts to charge them with the fact that, as to appellant, the Blettner trust deed was fraudulently released.

The statute regarding building and loan associations (Ch. 32, Sec. 87, Hurd) provides that "a borrower may repay a loan at any time," and makes a building association mortgage or trust deed due at the option of the maker—places it in the same position of an ordinary incumbrance, which has by its terms matured. The authorities cited in regard to the payment of incumbrances not matured are, therefore, not applicable. They knew that the records showed due upon the incumbrance $5,000. Rauguth, who had made it, and of all persons should know, assured them there was only $2,500 due on it; their representative went to the

office of the company, and there met the vice-president of the company with Rauguth, who assented to Rauguth's claim that only $2,500 was due; the president of the company was absent, the bond and trust deed were in the hands of the vice-president; the representative objected that the release was dated April 10, 1894, instead of about the time of the transaction; this was explained by Rauguth, that the release was made out at that time because he had made an arrangement to pay the bond at that time, and this explanation was assented to by the vice-president. But it is said the evidence shows the original trust deed and bond were not produced, but copies. On this the evidence is conflicting, and we are not prepared to say that it is manifestly against the evidence to have found, as the chancellor must have done, in order to render the decree he did, that the originals were produced by the vice-president and surrendered to Mason Bros.' representative. We should sustain the decree unless it is manifestly against the evidence, and especially so where the chancellor has heard all the witnesses whose testimony relates to this point. Miltimore v. Ferry, 171 Ill. 219; Delaney v. Delaney, 175 Ill. 199; Ragor v. Brenock, 175 Ill. 494.

The possession of the bond and mortgage by Blettner, the vice-president of the company and the trustee, at the office of the loan company, was sufficient to justify its payment by Mason Bros.' representative and the taking of the release made by him. Thornton v. Lawther, 169 Ill. 228.

It is claimed that the fact the bond and trust deed were canceled and marked paid, and the release dated so near the making of the trust deed, was sufficient to put Mason Bros.' representative on inquiry as to the *bona fides* of the transaction. He did inquire of the very persons who, of all others, in the absence of the president of the company, could give him the information, and acted on the information they gave him. We are of opinion that he did all that a reasonably prudent business man would have done under the same circumstances, and that the decree of the chancellor was right in so far as concerns the Young and Murray mortgage.

That Elizabeth S. Liversidge is entitled to the full protection of an innocent purchaser for value, and without notice of appellant's claim, follows without controversy in view of the statement of facts above made. So far as concerns the Blettner trust deed, it being under the statute payable at any time at the option of the maker, she had a right to rely on the release which was shown by the abstract which her attorney examined. Jummel v. Mann, 80 Ill. App. 288, and cases there cited.

Had the attorney gone to the records to examine, he would have obtained no more information than was given him by the abstract. He was not bound to go to the records, they not being different from the abstract. We think the decree was right as to Mrs. Liversidge, and it is affirmed.