Sarah Sampson, Appellee, v. Louis D. Glanz, Appellant.

Gen. No. 40,839.

Opinion filed December 13, 1939.   Rehearing denied December 27, 1939.

Jacob Levy, of Chicago, for appellant; Edward Mc-Tiernan, of Chicago, of counsel.

Abraham Kosdon, of Chicago, for appellee.

Mr. Justice Hebel delivered the opinion of the court.

This is an appeal by the defendant from a judgment entered by the court on the verdict of the jury against him in the sum of $1,000. In the case at bar the plaintiff filed a suit against the defendant on January 15, 1935, charging the defendant with having wrongfully released on November 19, 1928, one of two properties secured by a trust deed, and that she became the owner of bond No. 48 secured by said trust deed on February 3, 1930. The issues were presented under the plaintiff's third amended complaint charging fraud and deceit in the sale to her of said bond.

From the facts as they appear in the record, the plaintiff on February 3, 1930, went to Louis D. Glanz, the defendant, to purchase some securities, as she had done on previous occasions. She went to the Home Mortgage Investment Company, located in the same building as the Home Bank and Trust Company, where she asked to see Mr. Glanz, from whom she had on previous occasions purchased first mortgages and other securities. The plaintiff had known the defendant since the year 1925. After she had inspected several bonds, the defendant recommended for purchase a bond known as the Stringer Buildings Bond No. 48 for $1,000. The defendant explained it was known as the Stringer Buildings Bond as it was secured by two parcels of property, one parcel, a three-flat building at 2921 Pine Grove avenue, in Chicago, and the other parcel, a factory building at 1100 West 38th street, Chicago, Illinois. He told the plaintiff that this bond

was amply secured, and thereupon the plaintiff paid him the money and received the bond. The bond bore the maturity date of May 1, 1933.

It further appears from the evidence that when the plaintiff failed to receive interest on the bond she went to the defendant about February, 1932, who had sold her the bond, because he was also the trustee named in the trust deed securing the bond; that he told her not to concern herself, that the bond was "O. K."

On January 26, 1933, the plaintiff received a letter from Louis D. Glanz, advising her that a foreclosure was instituted by him as trustee because of defaults by the makers of the bonds in the payment of interest, and advising her further, for the first time, that the Pine Grove avenue property had been released and that the only security for the bond was the factory building. The Pine Grove avenue property had been released on November 19, 1928. The bond thus sold to the plaintiff bore on its face the following legend:

"Stringer Buildings, located at 2921 Pine Grove Avenue and 1100 West 38th Street, Chicago, Illinois." There also appeared on the bond:

"Trustee's Certificate. This is to certify that this bond is one of the series of bonds of Charles C. Stringer, for the aggregate sum of Sixty Thousand ($60,000.00) Dollars, numbered consecutively from one (1) to One hundred seventy (170), both inclusive, mentioned and described in the Trust Deed within referred to.

(Signed) Louis D. Glanz,<br>Trustee."

This action was brought to recover the damages sustained as a result of the loss occasioned by the wrongful release by the trustee of part of the security of the bond without marking the bond accordingly, or cancelling the same. The plaintiff also charged the defendant with fraud and deceit in the sale of the bond,

in that he knew at the time of the sale of the bond that it was not secured by two parcels of property, since one parcel had been released by release deed dated November 19, 1928. The plaintiff further makes claim in the complaint for money had and received, based upon the wrongful release of part of the security.

The first contention of the defendant is that the court erred in striking his plea of *res judicata,* and the defendant, answering the third amended complaint said:

"And for a further defense to said suit, the defendant states that on the 1st day of March, 1933, there was pending a certain foreclosure suit in the Circuit Court of Cook County, No. B-263049, entitled *Louis D. Glanz, as Trustee, v. Charles C. Stringer, et al.,* involving the bond herein in question, and on said date, the plaintiff herein was granted leave to file an intervening petition in said foreclosure suit, which petition set forth, among other things, that at the solicitation of defendant, the plaintiff purchased said bond No. 48 from the Home Mortgage & Investment Company, that the defendant herein fraudulently and wrongfully released the Pine Grove Avenue property from the lien of the trust deed securing said bonds. . . ." And in said answer it further appears:

"2. This defendant further states that subsequently Louis D. Glanz (defendant herein) resigned as Trustee and Max Luster was appointed Successor Trustee, and an amended bill was filed, setting forth that the Pine Grove Avenue property described in the said Trust Deed has been released by Louis D. Glanz, Trustee (defendant herein), and that the Court should determine whether or not the unpaid bonds are still a lien upon both premises as described in said trust deed and whether the release of the Pine Grove Avenue parcel was made in good faith and with the consent, knowledge and acquiescence of all of the bondholders. . . . On August 12, 1935, the said Circuit Court entered a

decree in said cause No. B-263049, finding among other things that the said Louis D. Glanz, Trustee (defendant herein), in executing and delivering the said release deed, acted in good faith, without intending to defraud or deceive any of the bondholders and that in fact the said Louis D. Glanz, Trustee (defendant herein), did not deceive or defraud any of the bondholders in so executing and delivering the said release deed.

"3. That the said decree entered in said cause No. B-263049, Circuit Court of Cook County, stands in full force and effect and plaintiff is estopped to claim that said defendant fraudulently, wrongfully and deceitfully released the lien of the trust deed on the property known as 2921 Pine Grove Avenue, securing bond No. 48 purchased by said plaintiff, as set forth in plaintiff's third amended complaint at law." On December 13, 1938, the court entered an order in the case at bar, sustaining plaintiff's motion to strike paragraphs 1, 2 and 3 of defendant's answer to count 3 above set forth.

From an examination of the defendant's pleadings it appears that Louis D. Glanz, the defendant herein, resigned as trustee and Max Luster was appointed successor trustee, and as successor trustee filed an amended bill in which he set forth the facts, and on August 12, 1935, the circuit court entered a decree in cause No. B-263049, finding, among other things, that Louis D. Glanz, trustee, did not deceive or defraud any of the bondholders in so executing and delivering the release deed in question.

The defendant contends that the plaintiff ought to be barred from her law action against the defendant personally because she intervened in the foreclosure suit involving the Pine Grove avenue property to determine priority of lien in that proceeding. Certainly it does not follow that the defendant in the instant case was a party to the suit in which relief was sought, and it does not appear that the parties are the same, nor can the subject matter be pleaded as a bar, and we are

of the opinion that the court did not err in entering the order of December 13, 1938, sustaining the plaintiff's motion to strike paragraphs 1, 2 and 3 of the defendant's answer to count 3. The subject matter and the parties not being the same, the finding of the court is wholly immaterial as to the finding in the foreclosure proceeding.

The plaintiff's position in this action is that a wrongful release by the trustee of the lien of the trust deed constitutes a breach of duty, and an infringement of the rights of the holder of the outstanding indebtedness secured thereby, and creates a right of action in favor of the latter against him personally, and the court's attention is called to the case of *Wertheimer v. Glanz,* 277 Ill. App. 389. The case at bar and that case involved the same defendant who was sued in that case for wrongful and fraudulent release of the trust security. Upon an examination of the case we find this court said:

"In *Lennartz v. Estate of Popp,* 118 Ill. App. 31, a similar situation was involved where a trustee had unwarrantably released the lien of a trust deed; it was held that the trustee was liable to the owner of the note for the damages which necessarily followed from his wrongful act. This case was remanded to the trial court but again came to the Appellate Court, as reported in *Lennartz v. Estate of Popp,* 175 Ill. App. 539." And it was further stated by this court: "that a trustee at his peril was bound to know that the indebtedness to the holder of the note was paid before he executed a release of the security. *Moran v. Dennis,* 184 Ill. App. 272, was a suit in assumpsit, based upon the wrongful release of a mortgage. *Sherwood v. Saxton,* 63 Mo. 78, involved a case where a trustee wrongfully released a trust deed. The opinion says that the trustee in a deed of trust to secure an indebtedness is the agent of both parties, debtor and creditor, and his duties must be performed with the strictest impartial-

ity and integrity; that if he is guilty of a breach of trust or an abuse of his discretionary powers he will be personally responsible to the party injured, and that he would not be justified in releasing any security unless it would be clearly to the advantage of the *cestui que trust*. The opinion also says that while proceedings against the trustees have generally been in equity, yet where the trustee is personally liable for the abuse of his powers or a breach of trust and the party injured demands damages, he may proceed in a court at law.

"We think it is evident that it was to the hurt of the plaintiff and other bondholders when the trustee released the more valuable of the two properties, leaving as security only the poorer property which, by the defendant's own showing, is not worth the amount of the mortgage indebtedness. Clearly this was a breach of trust on the part of the trustee."

The plaintiff further cites the case of *Welch v. Northern Bank & Trust Co.*, 100 Wash. 349, wherein the plaintiff brought action to recover damages from the defendant trustee for loss of the value of certain bonds, the security for which was wrongfully released by the latter. The defendant also argues that the plaintiff was not a holder of the bond at the time of the execution of the trust deed. The court in that case quoted from Perry on Trusts, as follows:

" 'When trustees have accepted the office, they ought to bear in mind that the law knows no such person as a *passive trustee*, . . .

" 'The trustee should make himself acquainted with the nature and circumstances of the property; for though he is not responsible for anything that happens before his acceptance of the trust, yet if a loss occurs from any want of attention, care, or diligence in him after his acceptance, he may be held responsible for

not taking such action as was called for.'" Perry, Trusts and Trustees, sec. 266. The court said:

"The sale of corporate securities through the mediumship of trust companies is a method of reaching the individual investor. Such securities are generally issued in large amounts, and because of the impracticability of disposing of them, or obtaining loans in single payments, the business world has resorted to the method of mortgaging properties and securities to a trustee company to be disposed of piecemeal to investors who are able to make small investments. Such transactions are made for the benefit of these future investors, and it would be against the policy of the law, as it would be against natural equity, to hold that the right of a bondholder attached at the time he pays his money for the bonds and not from the time the trust deed was made and the bonds issued and certified by the trust company."

The defendant insists that the release in question had been recorded in the office of the recorder of deeds on December 11, 1928, and that the release was a matter of public record and was equally accessible to the plaintiff and to the defendant, and therefore it cannot be contended in the instant case that the plaintiff was excused from making an examination of the records in question. She did not rely upon the statements of Louis D. Glanz, because she testified that after she procured the bond in question she exhibited the same to her son, who was an attorney. However, from the evidence that was a question of fact that was passed upon by the jury. In determining the facts the jury considered the evidence, saw the witnesses and decided whether the plaintiff was negligent or not in the purchase of the bond. It appears from the face of the bond itself that it was secured by two parcels of property, one of which was located at 2921 Pine Grove avenue, Chicago, and the other at 1100 West 38th

street, Chicago. From the evidence in the record it appears that she conferred with the defendant, who, in effect, pointed out the security of the bond by referring to the fact that the payment of the bond was secured by two pieces of property, and the jury no doubt had this in mind when they returned a verdict for the plaintiff. There is nothing in the record which would indicate that the plaintiff knew that one of the pieces of property had been released from the lien of the trust deed. The plaintiff purchased the bond on February 3, 1930, and at that time, according to the evidence, the Pine Grove avenue property had been released by the execution of a release deed dated November 19, 1928, and signed by the defendant as trustee. In view of the suggestion of the defendant that payment of the bond was secured by the two pieces of property mentioned and this being a representation which at the time the defendant knew was false, and the plaintiff relying upon the representation made by the defendant, she could not be charged with negligence in not examining the record to determine whether the bond was secured as stated by the defendant.

From the facts as they appear in the record it is evident that the plaintiff was misled by the representation made by the defendant, and while the defendant stresses the fact that the plaintiff exhibited the bond to her son who was an attorney, there is evidence that the exhibit to her son was made after she had purchased the bond, and that question was passed upon by the jury's verdict after a hearing and at the time the judgment in question was entered by the court. The verdict and judgment is supported by the evidence in the record, and we are of the opinion that the court was justified in entering the judgment here appealed from.

The defendant further contends that the court erred in receiving the special interrogatory tendered to the jury, the same not having been signed by each of the jurors; that this constituted prejudicial error. The plaintiff, on the other hand, calls attention to the fact

that this interrogatory was signed by each of the jurors. The trial court, on motion of the plaintiff which suggested to this court the diminution of the record, allowed the filing instanter of the true record containing the special interrogatory now on file in this court with all the jurors' signatures subscribed thereto.

A further question is to be considered, and that is did the plaintiff's cause of action accrue on the date that the release was filed for record, namely, November 19, 1928. The cause of action came into being when the plaintiff purchased the bond, that is, on February 3, 1930, and the suit was filed on January 15, 1935, well within the five-year period. Ill. Rev. Stat. 1939, ch. 83, par. 16, sec. 15 [Jones Ill. Stats. Ann. 107.275].

It would appear that the original complaint filed by the plaintiff contained the elements necessary to state a cause of action based upon a wrongful release by the trustee personally and for fraud and deceit, and that the subsequent amendments did not alter the cause of action, but enlarged on and clarified the plaintiff's position.

In the case of *White v. City of Belleville*, 284 Ill. App. 322, this court said:

"If the original declaration states a cause of action, however defectively stated, provided it is sufficient to sustain a judgment, an amendment is permissible amplifying the statement of the same cause of action, and will relate back to the filing of the original declaration so as not to be subject to the intermediate running of the statute of limitations. *Walters v. City of Ottawa*, 240 Ill. 259, 264."

It necessarily follows from what we have said in this opinion that the court was justified in entering the judgment upon the verdict, and no error has been called to our attention which would warrant a reversal. Therefore the order is that the plaintiff's judgment is affirmed.

*Judgment affirmed.*

DENIS E. SULLIVAN, P. J., and BURKE, J., concur.